All right, Mr. Boisnet, do you want to reserve some time for rebuttal? Yes, Your Honor. Five minutes, please. Five minutes. Very good. Go ahead, please. Good morning, Your Honors, and may it please the Court. My name is Mark Boisnet. I represent the appellant Daniella Farina. This is an appeal from an order proving a compromise. Essentially, the argument what we're asking this Court to do is to vacate the order and reband it back to the bankruptcy court in order to give the debtor an opportunity to point out things that were not set forth in the motion that we believe the court should consider before approving the settlement compromise. The debtor contends that there are assets not fully flushed out in the motion presented to the bankruptcy court that may have affected whether the court believed this to be a fair, reasonable compromise. Why don't you explain that, because it seems it's pretty straightforward. He's giving up his interest in this real property. What asset was he keeping, or what was – that's the only one that would be relevant. Yes, Your Honor. So if you look at the schedules in and of themselves, they indicate that these lawsuits have a value, at least in the schedules, of $5 million. But the compromise seems to focus on, apparently, this affliction battery claim. But if you look at ER 367, which is, I think, the one that has a $2 million value, it talks about a partnership agreement and return of partnership assets. Those assets are not disclosed at all in this motion of compromise. I don't know what that means, because they don't exist. The trustee has no value, but it may have value. And if you read the settlement agreement the way I read it, he may say he's released his claim on the property, but he's still keeping his claim on the money because the settlement agreement as written says that if there are funds above administrative claims, Mr. Elam has the right to go for those funds still. Well, he has a right to a claim as an unsecured creditor. No, that's not the way it reads to me. Well, that's the way it would work. I mean, you're saying there's an ambiguity in the agreement. I can certainly go back and read it. That's not the way I read it. I think it's in paragraph 4 of the stipulation where Mr. Elam keeps all rights to net proceeds and preserves those rights, and those rights are to be determined in the future by agreeing this agreement. But if he's waived title, I don't see how he keeps an ownership interest in the proceeds. I mean, he appears to have clearly waived an equity interest in the property. It's going to be sold. He has no voice in the sale. The administrative expenses will be paid. Maybe you're right. Maybe you're wrong. But it's still a significant benefit to the estate that the $75,000 that would be his half of the money already there is going to the estate without any litigation cost, and we're going to sell this other property, and a significant portion of that money will go to the estate. I don't know that I care unless you can tell me why that would not, why this wouldn't be better just from the perspective of you don't have to litigate to have those results. But what if I were able to show the court, the bankruptcy court, for example, that the litigation claims actually have a much greater value than being presented, that they do have a value of $2 million, and that there could be a path to get that $2 million, much easier than being presented in motion. That $2 million could be used to pay the estate full, but there's no analysis of that. Well, that's because there's no evidence of that. I mean, you know, the trustee has exercised business judgment. The trustee has looked at this and determined, said pretty clearly these claims are not achievable. And there was no, you know, your client both before the settlement, after the settlement in terms of cooperating with the trustee, had every ability to provide information to the trustee to gainsay that business judgment. There was no argument in this regard below, and there's no evidence that such information was provided to the trustee as part of the debtor's duty to cooperate. Am I missing something in the record? Well, I mean, the lawsuit themselves are disclosed, obviously, in the trustee's motion. Right, and the trustee looked at them and evaluated them as valueless. I mean, it's one of the strongest statements I've ever seen of a trustee saying this litigation isn't worth anything, because usually they hedge the bets. You know, so I thought that was fairly remarkable. Well, when I read it, because I wasn't part of the case yet, so I was kind of looking at this with a clean slate, it looked to me as if the trustee really was focusing on part of the claims that were being litigated in the state court, that being the battery claim. I didn't see any discussion on the breach of contract claim, the liquidation of partnership assets, and it just seemed to me as well, shouldn't we know what these assets are and what value they are? And the trustee could just say it, these have no value, these breach of contract claims. But were these assets of the partnership other than these pieces of real property? Well, you have to look at the complaint, which I think is ER-367, where they talk about there being bank accounts and perhaps were owned by the partnership. There were the two properties, obviously. But beyond that, I don't know what other assets may have been out there. I don't know how much money were in these bank accounts at the time that the parties, in a sense, broke up. And because those weren't set forth in the motion, there's no way for anybody to know whether those were valueless or had some value. And I just think that's something that the trustee at least could have touched on with the bankruptcy court. Now, we did look at the breach of contract claim, but there's nothing there. The debtor, your client, was one of the partners. If there's a lot of money in those bank accounts at one point, couldn't she have come forward and said, look, there's a whole bunch of money lying in a bank account here. Why are you letting that go? But I think that's what the complaint said. And obviously, the debtor was pro per at the time, and she did her best to put an argument together, I think, for the hearing. But that's what the underlying complaint was saying. All this money was taken from the debtor, and through her state court complaint,  Well, yes, she's trying to get everything, but everybody understands that. But didn't she have the obligation, beyond what she put in her complaint, if there was actually real dollars out there someplace that were capable, didn't she have the obligation to provide the trustee with that information? Because it's the trustee who holds those claims. And if the trustee doesn't have that information, why can't the court go forward and approve the settlement when a debtor who had a duty to provide everything you're saying somebody should have gone out and discovered didn't do it? No, the debtor absolutely has the duty to provide the trustee all information, whether the trustee asks or not. But the trustee did have the information, obviously, because she had access to the state court complaints, and she listed that particular complaint in the motion. It just wasn't discussed. The trustee said that, well, the motion or the information that I recall reading, I'll go back and look at the record. The trustee said in the brief, in support of the motion, we've evaluated the claims. They are not capable of collection. I don't want to use the term garbage, but that's the sense you get, that this is not a collectible situation. And the state court litigation hadn't exactly been kind to her. I mean, she's behind some significant sanctions awards that would be an offset against anything. I mean, it's hard to see. I know she filed a bunch of stuff right before she filed the bankruptcy, so those hadn't been tested in state court. But on a net win-loss record, she was not doing well. No, she wasn't. But if we're basing it simply on the debtor and the debtor's conduct, then, yes, I guess the court could. But it seems to me that the court should be given the facts and analysis of why these claims will fail, based on the merits of the claims being made in the state court proceeding. But in that case, she was actually represented by an attorney who was bringing these claims on her behalf. And so, you know, when I look at it, to me, bankruptcy courts should at least be told why the breach of contract claims, the partnership liquidation claims, were valueless. Because they may have had value, but there's no way to know because it's not really set forth. So it's your argument she didn't have enough time to present this information to the court, so we should reverse to have a do-over on this motion so that she can have more time? Is that what your argument is? Well, part of it, because a bankrupt judge can only make a ruling on the information provided. And to me, it was this information was really not provided to the bankruptcy court to consider, and perhaps. So are you saying the trustee should have provided it? Well, yeah. I mean, the trustee is the one that's explaining her business judgment. And, you know, obviously the court gives deference to the trustee because the trustee's, you know, presumably looked at all these assets and made an evaluation. And I think it's her obligation to go through each asset and say, this has value, this doesn't. And rather than say that, you know. But doesn't the case law from the Ninth Circuit go entirely the other way? I mean, the case law is very clear that the trustee doesn't have to do what you just said the trustee should do, which is on every single point explain the business judgment. Like I said, I've seen affirmances on far less than what was here, maybe not far less, but less. And a mini trial is not required. No, and I agree. But, for example, I think they listed, you know, let's say 10, you know, claims in state court. And I think, for example, that the motion really only focuses on one battery claim. But there was no, again, explanation on this contract claim, which seems to disclose assets on the face of the complaint. So I'm not saying each and every single case, but ones where there might be indicated assets. You know, at least there should be some conversation about why the value the debtor gave it really is not accurate because, and it could be a short statement because there's, for whatever reason, there's no breach of contract or there's no claim here. But the only explanation is given is regarding this battery claim. And I'm not sure why they took the time to talk about one claim and not discuss the other one at all. I'm sorry. Go ahead. I was going to say you have about four minutes left, if you want. Oh, I'm sorry. It's up to you. You can keep going. I'll reserve it, unless you have more questions for me. Did you? No. Okay. All right. Mr. Williams, please go ahead. Good morning, Your Honors. Sorry about that. Thank you. Good morning, Your Honors. May it please the panel. My name is Ryan Witthans, and I represent Appellee Yanina M. Hoskins. She is the duly appointed Chapter 7 trustee in this case. When the debtor filed for bankruptcy, she had ownership interests in two properties that she co-owned with Victor Alam, perhaps some other property interests as asserted by the debtor, and she had extensive pre-petition litigation with Mr. Alam. Those interests became property of the bankruptcy estate pursuant to Section 541. Pursuant to her duties, the trustee evaluated and prepared to liquidate the estate's property. She assessed the estate's litigation claims and found them to be not meritorious, and she determined that the estate's probability of success was extremely low. The trustee also determined that there were several avoidable liens against the properties and that the estate was administratively insolvent. In an exercise of her business judgment, the trustee entered into a settlement agreement with Mr. Alam. He agreed to contribute his equity in the properties, release his recorded abstract of judgment, and waive any secured or surcharge claims relating to the properties. And in exchange, the trustee agreed to release Mr. Alam from all pre-petition litigation. The trustee filed a motion to approve the compromise and a supporting declaration. It set forth ample evidence supporting the ANC factors, and it was served on the debtor. The bankruptcy court held a hearing lasting for about an hour and 20 minutes. It listened to and overruled each of the debtor's objections, and the court found that the ANC factors were fulfilled, and it approved the compromise. This appeal presents four main issues. First, whether the bankruptcy court had subject matter jurisdiction, which it did. Second, whether the debtor has standing to appeal the compromise order, which she does not. Third, whether the bankruptcy court complied with due process. Let's stop right there on standing, because I know you're on a roll. On standing, you argue that she doesn't have standing, but what evidence do we have in the record that this absolutely will not be a surplus estate? Because you're also arguing in some places that some of these liens are illegitimate. So if we get rid of some of these liens and the related claims, and if this second property yields significant proceeds, how can the panel conclude? The bankruptcy judge found that he couldn't conclude, or she couldn't, he couldn't conclude at this time that there was no standing. Why do you suggest that we have the ability to reach a different conclusion? Yes, Your Honor. So the record has reports of sale of the properties, and that's a little bit less than $400,000 in the estate. There are attorney's fees of at least $240,000. Where is that in the record? These are developments since the compromise order has been entered, so it was not in the record before the bankruptcy court at that time. Okay, where is it in the record, other than coming out of your mouth, where is it that we could go in the docket and find that information? I don't think that you can, Your Honor. Okay, so it doesn't exist. Very well. If you get my point. I do, I do, Your Honor. Then I think the next main issue is whether the bankruptcy court complied with due process, which it did. And let me just stop you on the standing point. Yes. You know, this may well, if that somehow is in the record at a later day, not today, not for purposes of our decision, maybe she doesn't have standing to go forward, but today I find it hard to conclude that she doesn't have standing. Very well, Your Honor. And even if that point is conceded, we still have subject matter jurisdiction, due process, and just the merits of the compromise order, which show that the lower decision should be affirmed. So speaking first about subject matter jurisdiction, the debtor asserts that an alleged individual named Justin Backey filed her bankruptcy case, either by mistake, against her authorization, or by fraud. The details have changed significantly as the case has progressed. The bankruptcy court addressed these assertions in detail at the hearing on the compromise motion. It noted the evolving and contradictory nature of the narrative presented by the debtor, and it described her evidence, which included a copy of an alleged retainer agreement and a cleared check as suspect. And it concluded that the debtor's story was, quote, entirely fabricated, unquote. The bankruptcy court's findings were based on an exhaustive review of the evidence before the court, and they should be affirmed. Moreover, yes, Your Honor. She, at least as the case has developed, her argument was not that I didn't want to file a bankruptcy. Her argument was I didn't want to file a Chapter 7, correct? At one point it was that she didn't want to file a Chapter 7. At one point it was that no bankruptcy petition should have ever been filed. But at the time of the hearing, it was the, she was at the point of saying wrong case. And she recently filed something saying she volunteered. There doesn't appear to be, is the fact that she potentially wanted a Chapter 13 but got a Chapter 7 raise a jurisdictional problem? I don't think that it does, Your Honor. I don't disagree. And the record shows that from day one the debtor intended to file a Chapter 7 petition. And it wasn't until after the bankruptcy court had entered a series of rulings against her that she started changing her story. But there was never any evidentiary support that she actually intended to file under a different chapter or that she never intended to file in the first place. Can I jump you out of your outline? I'm interested in discussing the merits point and particularly the point about Paragraph 4 of the settlement agreement. I'd like to hear your take on what that means. Does that preserve Mr. Alam's right to say I actually own these proceeds or some portion of these proceeds that remain after payment of administrative expenses? So that paragraph, and you're referring to any funds left over after payment of administrative claims, basically the parties will decide what to do with those, either by stipulation or adversary proceeding or otherwise. Right. And the sentence I'm actually most interested in is the second one. To be clear, Mr. Alam's rights to any net proceeds in excess of the allowed administrative expenses are fully preserved. And this settlement agreement does not impact those rights. Did that leave him free to say, oh, I waived my right to ownership of the property, but I still reserve my right to ownership of the money that resulted from the sale of the property? He is free to make that argument to the extent that those funds are not eaten up by the estate's administrative expenses. I'm not sure if the bankruptcy court at the time of the compromise motion had knowledge of the attorney's fees then current in the case, but I can represent to the court that all of those funds will be paid to attorney's fees, and so the point is moved. But he preserved his whatever claims he had to be the owner of the money, and the trustee didn't give up any defenses to any of those claims, correct? Correct, Your Honor. So the estate was no worse off in that respect before and after the settlement? Exactly. That's correct, Your Honor. The settlement, in effect, under your reading of it, which is different from mine, frankly, but I'm going to go with yours, is that you removed the impediment to liquidation of the assets, but you might still incur additional attorney's fees at the back end, and you're basically just allowing the estate to incur expense when there's something to argue about. Yes, Your Honor. Essentially, it's a method of providing funds to the estate so that it can proceed with litigation, and it's basically the first step in eventually making a distribution to unsecured creditors. But you've just told us there's not going to be any distribution to unsecured creditors. From other estate assets, such as the sale of the First Avenue property, Euclid property, things resulting from that, there may be a distribution to unsecured creditors. The portion of equity that was contributed by Mr. Elam was dedicated towards payment of administrative expenses. Over half could go to unsecured creditors. I get it. Okay. Yes. And so the settlement agreement is basically an agreement to negotiate later should there be any additional funds out of his portion available after the attorney's fees are paid. Exactly, Your Honor. And are the attorney's fees being paid first from his money? They are. Okay. Now I get it. Okay. Let's see. I believe that I was... I skipped you over your due process argument. I think that's where I... Yeah. That's the part I jumped you over. Thank you. That's exactly where I was going, Your Honor. The debtor argues that she didn't receive a copy of the compromise motion or needed more time to review it or needed various accommodations before she could respond to the compromise motion. The bankruptcy court considered and overruled these arguments and found that the evidence that she presented was insufficient to rebut the trustee's proof of service in the compromise motion. A close review of the debtor's appeal briefs and the record reveals another hole in her assertions. The trustee had filed a request for order shortening time on the compromise motion on March 1st, 2022 at 318 in the afternoon. The trustee served it on the debtor by email that afternoon, and by 955 a.m. the next morning, the debtor had filed a 21-page objection to the trustee's request. The debtor obviously received the trustee's request by email, comprehended its contents, drafted and filed the detailed response, all in less than 24 hours. Did the trustee also provide telephonic notice of that hearing, though? No, the trustee did not. Okay, so the only notice provided was this email notice. Yes, for the request for an order shortening time, the only notice was email notice. Also on March 2nd, the trustee served the compromise motion by email to the debtor's same email addresses as the request to shorten time and by mail to the address which was designated by the debtor for service. The debtor makes no effort to explain why she could not respond to this filing within a two-week period, makes no sense why the debtor could respond so quickly and robustly to the application for an order shortening time, but claimed ignorance of the related compromise motion. The bankruptcy court spent a lot of time analyzing the debtor's assertions regarding whether she got the motion, various accommodations that she requested and that it was making, how much time she needed to review it, and it found that her assertions were not credible. That finding is supported by the evidentiary record and it should be affirmed. Finally, I see I have two minutes left, but I'll briefly talk about how the bankruptcy court properly decided the compromise motion. The evidence supporting each of the A&C factors was set forth in the motion and the supporting declaration. The evidence is also described in the trustee's appeal brief, so I won't repeat it here. The bankruptcy court properly found that the A&C factors were fulfilled. Its decision was concise. It merely said the A&C factors had been met and that the debtor's objections were overruled, but the brevity of the bankruptcy court's analysis does not affect the validity of its decision, as set forth in the case law cited in the appeal brief. Here, the record amply supports approval of the compromise, and notably the debtor has not provided any evidence below rebutting any of those factors. She's also not cooperated with any of the trustee's efforts to obtain further information or documents. This refusal includes failing to appear at any of the eight scheduled 341 meetings that have been set so far in the bankruptcy case. So let me stop you there, Jeanette. She didn't appear at eight 341 meetings? Correct, Your Honor. Okay. To her credit, in the first one, I believe that she offered an excuse of a preexisting commitment, but in the subsequent seven 341 meetings, she just failed to appear. Would she offer to physically appear or appear by Zoom? I believe by telephone, but I'm not 100% certain about that. Okay. Regardless, the record amply supports approval of the compromise. The bankruptcy court approved or applied the correct legal standard. The bankruptcy judge was well-informed and had apprised himself of all facts necessary to make an intelligent and independent judgment that the settlement agreement was fair and equitable, and the bankruptcy court did not abuse its discretion in approving the compromise. And for these reasons, the compromise order should be affirmed by the panel. Thank you, Your Honors. Okay. Thank you. Thank you. Boisnat, you've got a little over four minutes, I think. A little under four minutes, so please go ahead. Thank you, Your Honor. One of the things that even hearing counsel present his argument is, you know, the compromise, as I understand it, there's supposed to be a benefit for the estate, which I presume is the unsecured creditors in this case. And there was really no analysis of what unsecured creditors were going to receive. If they were not going to receive anything, it seems to me on that basis alone, the compromise should not be approved. Well, you know, we sort of drilled down on that, and you had a better analysis of that one paragraph that it did keep some rights, but by shifting 100% of the administrative expenses to his half of the proceeds, that's a benefit to unsecured creditors, isn't it? Right there. But how do we know that, Your Honor? But how do we know that? Because there's no breakdown of who's getting what. Well, we know that because that's what the settlement, you know. Well, the settlement just says there might be a pathway to be some distribution to unsecured creditors. Isn't that a benefit? I mean, there's no guarantee. Isn't that a benefit, having a pathway? Is that subjective to me without telling unsecured creditors you might get a cent on the dollar? I don't know. But it should be – there should be some real benefit to the unsecured creditors. Well, I mean, if you're an unsecured creditor watching the case, wouldn't you rather have a compromise that gives you a chance of recovery rather than no compromise that gives you zero chance of recovery? If that was all the information I was presented with, then yes. But that goes back to my earlier argument, is that what if there were assets that are not presented to the bankruptcy court to be analyzed whether there was more value than one cent on the dollar. And did your client ever provide – you know, again, you keep saying, well, in the complaint she said these things, but your client's been labeled a vexatious litigant by the state court, correct? Correct. But vexatious goes to the character of the person, not the merits of the claim. Well, but it goes to the need for some hard evidence. You know, she could have showed up at one of eight 341A meetings and said, hey, there was this – I mean, she had opportunities and a duty to cooperate. And what you're, in effect, saying is I'm not even sure what the trustee was supposed to do with that level of non-cooperation. Right, but keep in mind that the compromise came into effect just about, I think, a week or two after the trustee had been appointed. So there wasn't a lot of time for the debtor to communicate with the trustee, nor was there a request by the trustee for information. That brief period from appointment to motion being filed to approve a compromise. Okay. So, you know, I think there was a two-week window there. Has anything developed since then? I mean, she hasn't provided any evidence. There's nothing in the record to suggest that these – further support these claims. State court claim? No, I mean, we are, obviously, in the brief. We attached the complaint just to show that there appears to exist, but there was no reference to them in the motion, which is the point we're trying to make. But, no, other than that, there's been no hard evidence presented because the case got dismissed right away. As soon as the settlement was approved, that case got dismissed. There was no way to do that any further. Let me ask you. You've got a few seconds, but would you call – you have not argued today. Are you waiving the arguments of lack of jurisdiction first? No, I'm not. I said the argument before in our opening brief that the debtor's intent was not to file, obviously, the Chapter 7. She clearly intended to file bankruptcy. That's undisputed, but she wanted to file as a Chapter 13. Somehow got filed as a 7. Why does that mistake deprive the bankruptcy court of jurisdiction? Well, because she wanted a petition to be filed. That's not disputed. She didn't actually sign this particular petition that indicated she was filing Chapter 7. She invoked the jurisdiction of the court. I'm not – I just don't see it as a jurisdictional problem. Okay. I see we don't have enough time left, Your Honor, so unless you have any questions, I'll submit. Thank you. Thank you very much. Thanks to both sides for their good arguments. The matter is submitted.
judges: FARIS, TAYLOR, BRAND